UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

Case No. DK 10-11900

JAMES L. LANGLEY,                          Hon. Scott W. Dales

Chapter 7

Debtor.

_____/

STEPHEN L. LANGELAND, TRUSTEE,             Adversary Pro. No. 12-80327

Plaintiff,

v.

CHEMICAL BANK f/k/a BYRON BANK,
CITI GROUP GLOBAL MARKET, INC.,
d/b/a MORGAN STANLEY SMITH
BARNEY, BEVERLY A. BAIRD, CHAD
THOMAS MYERS, THOMAS ALLEN
MYERS, KRISTANN MARIE SNYDER
f/k/a KRISTANN MARIE WILCOX,
RICHARD L. STORER, ELIZABETH GESS
JONES a/k/a BETSY GESS, and TODD
MYERS,

Defendants.

_____/

OPINION AND ORDER DENYING
MOTION FOR SUMMARY JUDGMENT

PRESENT:   HONORABLE SCOTT W. DALES
United States Bankruptcy Judge

Plaintiff Stephen L. Langeland (the "Trustee") commenced this adversary

proceeding against Defendants Chemical Bank, f/k/a Byron Bank (the "Bank"),

Beverly A. Baird ("Ms. Baird"), and others[1] to recover on a prepetition claim of chapter 7

_____

[1] In addition to the Bank and Ms. Baird, the Trustee has named as defendants (1) Smith Barney; (2) Chad Myers; and (3) Mr. Myers's friends and family members who, according to the Trustee, received funds that Mr. Myers allegedly embezzled from Mr. Langley.

debtor James L. Langley ("Mr. Langley" or "Debtor").  The Trustee alleges that Mr. Langley suffered injuries after Ms. Baird, a notary public and branch manager at the Bank, wrongfully notarized Mr. Langley's forged signature on a document purporting to grant Chad Myers a power of attorney (the "POA").  The Trustee alleges that Mr. Myers then used the POA to embezzle hundreds of thousands of dollars from Mr. Langley.  The Trustee blames the Bank, Ms. Baird, and Mr. Myers for Mr. Langley's losses.

The Bank filed a motion for summary judgment under Rule 56 (the "Motion," DN 33), contending that there is no genuine issue of material fact regarding the ownership of two checking accounts belonging to Mr. Langley's limited liability companies, Dealer Direct Auto Sales (a used car business) and Wayland Outpost (a party store).  The Bank argues that the Trustee lacks standing to recover for injuries that Dealer Direct and Wayland Outpost suffered because these entities are separate from the Debtor.  Because the Debtor, as a member of the limited liability companies, has no interest in their property (including any causes of action), the Trustee, who derives his rights from the Debtor under 11 U.S.C. § 541, similarly has no interest, and therefore, no standing.

The Bank further contends that even assuming the Trustee has standing, the statutes of limitations on any claims related to payment from a deposit account, and any claims regarding the notarial acts, have run so the claims are time-barred under state law.  Specifically, the Uniform Commercial Code ("UCC") imposes a one-year bar, pursuant to M.C.L. § 440.4406(6), regarding any claim for items paid by the Bank between 2006 and December 1, 2007.[2]  And, because the POA was notarized on September 17, 2007,

---

[2] At the hearing on the Motion held January 9, 2013, the parties agreed that this time-bar applied to the deposit account items paid between 2006 and December 1, 2007.

the notary claims run afoul of the three-year statute of limitations for negligence claims under Michigan law.

The Trustee filed a response to the Motion (the "Response," DN 74), which he supported with documents and affidavits as Fed. R. Civ. P. 56 requires.

The court heard oral argument on January 9, 2013, in Kalamazoo, Michigan, and interrogated counsel in an effort to identify the issues actually in dispute. *See* Fed. R. Civ. P. 56(f)(3) and (g). After carefully reviewing the record, including the depositions and affidavits attached to the Motion and Response, and after considering the parties' arguments, the court concludes that there are genuine issues as to a number of material facts, and as such, the Bank and Ms. Baird are not entitled to judgment as a matter of law.

## I. JURISDICTION

The court has jurisdiction over Mr. Langley's chapter 7 bankruptcy case pursuant to 28 U.S.C. § 1334(a). This adversary proceeding and the bankruptcy case have been referred to the bankruptcy court under 28 U.S.C. § 157(a) and LCivR 83.2 (W.D. Mich.). This adversary proceeding, though related to the Debtor's case, falls outside the court's core jurisdiction under 28 U.S.C. § 157(b)(2) because it involves a right to recovery on state law claims that do not otherwise owe their existence to the bankruptcy proceedings or bankruptcy law. Nevertheless, because today's decision does not resolve all issues in the case, the order is interlocutory, not final, and therefore not within the proscription expressed in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), and elsewhere. *See* Fed. R. Civ. P. 54(b). Perhaps by the time the court is called upon to render a *final* judgment, the appellate courts will have provided more guidance on the extent of the bankruptcy court's authority to do so.

## II. ANALYSIS

On a motion for summary judgment, the court must determine whether the moving party has shown that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  The court must identify, not resolve, factual disputes, keeping in mind the procedures for opposing a summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); Fed. R. Civ. P. 56(c).  In addition, the court must draw all reasonable inferences against the moving party, here the Bank and Ms. Baird.  *United States v. Diebold, Inc.*, 369 U.S. 654 (1962).

A.      Standing and the Business or Personal Nature of the Deposit Accounts

The record in this matter persuades the court that there is a genuine issue as to the ownership of the Dealer Direct checking account and, therefore, the court cannot accept the Bank's arguments premised on lack of standing.  More specifically, the affidavits from the Bank's employees suggest that the Bank, following its own policy forbidding joint ownership of business accounts, treated the Dealer Direct account as a business account, rather than a personal account, contrary to Mr. Langley's supposed intent when he opened it using his name and that of his limited liability company, Dealer Direct. Within 24 hours of establishing the jointly-titled account, the Bank apparently took corrective measures to reflect its view that Mr. Langley meant to create a business account for Dealer Direct.

Although it would appear that Mr. Langley's separate companies made business deposits into the accounts, tending to support the Bank's ownership theory, the Bank's Vice President and Project Manager, Mr. Braun, notes in his affidavit that the initial deposit documents reflect Mr. Langley as the "primary owner."  *See* Motion at Exh. 1.

Because the Bank does not allow jointly-held business accounts, and because it regarded the Dealer Direct account as a business account, it unilaterally "corrected" the title information on some, but not all, internal records. Significantly, for purposes of today's decision, Mr. Braun concedes that the signature card "identifies Mr. Langley as the account owner."

Mr. Langley, in his affidavit (DN 75), affirms that he regarded the Dealer Direct account as his personal account, reflecting either his understanding of the ownership or simply his confusion about the legal effect of operating a business through a corporate form. Regardless, the record supports an inference that Mr. Langley's own retirement and personal funds were deposited into the account. Moreover, the Bank's use of Mr. Langley's social security number when establishing the Dealer Direct account, his name on the Dealer Direct checks where the account holder is typically identified, and the signature card all support an inference that Mr. Langley was the true or at least joint owner of the Dealer Direct account.

Similarly, with respect to the Wayland Outpost account, the court is unable at this time to determine the ownership of the monies in this account, and therefore the Trustee's standing to assert claims related to the account. The record may support a finding at trial that Mr. Langley's own retirement and other personal funds were deposited into it. The court acknowledges that, at this early stage of the proceedings, the record does not contain the same quantum of documentary evidence supporting Mr. Langley's title to the Wayland Outpost account as it does regarding the Dealer Direct account. Nevertheless, the court believes the Trustee is entitled to a full and fair opportunity for discovery to

establish his standing under the circumstances.  Pursuant to Rule 56(d), the court will deny this aspect of the Motion without prejudice.

B.       Statutes of Limitations

   1.       Deposit Related Claims

At oral argument, the Trustee conceded that the Bank account statements were available for Mr. Langley's review throughout the course of Mr. Myers's allegedly fraudulent activity and therefore Mr. Langley had the opportunity and duty to detect the fraudulent withdrawals soon after Mr. Myers wrote the first suspicious checks.  Both parties agreed that items the Bank paid from January 1, 2006 to December 1, 2007 are barred by the UCC's one-year absolute time bar pursuant to M.C.L. § 440.4406(6).  This bar shall be established in this case, and items paid during this period are not subject to recovery.  *See* Fed. R. Civ. P. 56(g).

In addition, the Bank contends that the Trustee's other deposit account claims are also barred under M.C.L. § 440.4406(4) because a depositor cannot assert specified claims against a bank if he fails to promptly review bank statements and report unauthorized transactions.  In response, the Trustee asserts that, despite the one-year bar of § 440.4406(6) and the failure to review statements promptly under § 440.4406(4), a plaintiff may nevertheless assert claims against a depository institution if he proves that it did not pay the items in "good faith."

The Bank contends that there is no evidence to suggest that it did not act in good faith.  Based on Mr. Mancinelli's affidavit (DN 73) under Fed. R. Civ. P. 56(d), however, the court finds that the Plaintiff cannot present essential facts to justify his position because the case is in its infancy and evidence of the Bank's good or bad faith may not

yet be available. For example, the Plaintiff has not had an opportunity to depose Ms. Baird or her co-workers. This testimony could suggest collusion between Mr. Myers and Ms. Baird or other facts casting doubt on the Bank's payment of the disputed items in good faith. Moreover, counsel's affidavit establishes that Mr. Langley's computer, which may contain information bearing on this question in the form of email communications or otherwise, is still within the exclusive custody of local law enforcement authorities. In short, the court cannot fault the Plaintiff for failing to offer evidence challenging the Bank's good faith at this time. Consequently, pursuant to Fed. R. Civ. P. 56(d), the court will deny this aspect of the Motion without prejudice to renewal after the Plaintiff has had a full and fair opportunity for discovery.

  2.  Notary Related Claims

The parties agree that, under M.C.L. § 600.5805(10), negligence claims are subject to a three-year statute of limitations period that runs from the accrual date. The parties differ, however, as to when the notary-based negligence claims accrued. The Bank contends that the claims accrued on September 17, 2007, when Ms. Baird performed her notarial act by affixing her signature to the POA and Mr. Langley suffered "nominal damages." The Plaintiff, on the other hand, contends that the claims accrued when Mr. Langley actually suffered meaningful injury in a way that would allow him to state a claim for negligence under Michigan law, by alleging concrete or "appreciable" damages. *Gebhardt v. O'Rourke*, 510 N.W.2d 900 (Mich. 1994).

Michigan's general accrual statute, M.C.L. § 600.5827, provides that a claim accrues on the date the "wrong" occurred, regardless of when damages resulted. Specifically, the statute provides in relevant part:

> Except as otherwise expressly provided, the period of limitations runs from the time the claim accrues. The claim accrues at the time provided in sections 5829 to 5838, and in cases not covered by these sections the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results.

M.C.L. § 600.5827.[3] The Michigan Supreme Court has interpreted the accrual statute to mean that a wrong has occurred when the plaintiff is harmed, not necessarily at the moment the defendant acted negligently. *Trentadue v. Buckler Lawn Sprinkler*, 738 N.W.2d 664 (Mich. 2007).

The court is not persuaded that the Bank's reference to "nominal damages" during the hearing establishes accrual, and finds it difficult to square that view with the Michigan cases that seem to require allegations of actual damages. First, the Bank has failed to identify any appreciable loss at the instant that Ms. Baird notarized the offending document. Second, nominal damages suggest that an appreciable loss had not yet been incurred. Third, the state courts have explained that subsequent claims of additional harm caused by a single act do not establish a new accrual date. *Marilyn Froling Revocable Living Trust v. Bloomfield Hills Country Club*, 769 N.W.2d 234 (Mich. Ct. App. 2009). In other words, the last phrase in M.C.L. § 600.5857 —"regardless of the time when damage results"— does not mean that an actionable "wrong" may exist without damages. This would be a significant departure from the time-tested, black-letter rule that to state a claim for negligence, a plaintiff must allege duty, breach, injury, and causation. Rather, the phrase simply clarifies that the possibility of future or continuing damages will not postpone the accrual of an actionable "wrong," a term that already imports the requirement of appreciable damage. *Gebhardt v. O'Rourke*, 510 N.W.2d 900

---

[3] Sections 5829 to 5838 cover claims not at issue in the present case.

(Mich. 1994). Otherwise, as courts have noted, the statute would extinguish a claim before a plaintiff could even file a "proper complaint." *See Schaendorf v. Consumers Energy Co.*, 739 N.W.2d 402, 406 (Mich. Ct. App. 2007) (*citing Stephens v. Dixon*, 536 N.W.2d 755, 758 (Mich. 1995) and *Chase v. Sabin*, 516 N.W.2d 60 (Mich. 1994)).

Because a cause of action does not accrue before the negligent act produces an injury, *Marilyn Froling Revocable Living Trust,* 769 N.W.2d at 251, the Trustee's interpretation of accrual -- the date Mr. Myers began making purchases on Mr. Langley's Citibank credit card using the POA -- is more consistent with state law.  On the present record, that date appears to be October 24, 2007.[4]

### III.  CONCLUSION AND ORDER

The court has considered the other arguments in support of the Motion and, on the present record, finds them without merit.  Except with respect to the parties' stipulation as to items paid before December 1, 2007, genuine issues of material fact remain. Accordingly, the court will deny the Motion without prejudice to renewal after a full and fair opportunity for discovery.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Motion (DN 33) is DENIED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Scott Mancinelli, Esq.,

---

[4] Perhaps discovery will show that Mr. Langley suffered an appreciable loss resulting from the allegedly negligent notarization outside the three-year limitation period, but on the present record the court is not persuaded that the notary claims should be time-barred in the summary fashion that the Bank and Ms. Baird propose.

Andrew C. Shier, Esq., Eric A. Michaels, Esq., Glenn P. Berger, Esq., Chad Thomas Myers, David L. Conklin, Esq., Michael D. Almassian, Esq., Richard L. Storer, and Todd A. Myers.

END OF ORDER

**IT IS SO ORDERED.**

**Dated January 31, 2013**



Scott W. Dales
United States Bankruptcy Judge